T.C. Memo. 2002-273

UNITED STATES TAX COURT

AUGUSTIN B. JOMBO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16627-99.                Filed October 29, 2002.

Augustin B. Jombo, pro se.

<u>C. Ted Li</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined a deficiency in
petitioner's 1996 Federal income tax of $503,105 and an accuracy-
related penalty under section 6662 of $100,621.

Petitioner worked for the Consulate General of Nigeria in
New York City in 1989.  In that year, he won about $26 million in
the New York State Lottery (NYSL).  The winnings were payable in

20 equal annual installments beginning in 1989.  In 1996, petitioner received $1,238,100 as lottery winnings, and he no longer worked for the Nigerian Consulate General.  He disclosed his lottery winnings on his 1996 income tax return and claimed that the winnings were not taxable in 1996 because, inter alia, he was employed by the Consulate General of Nigeria when he won the lottery.  Following a concession by petitioner, the issues for decision are:

1.  Whether petitioner bears the burden of proof.  We hold that he does.

2.  Whether petitioner constructively received all of his lottery winnings in 1989.  We hold that he did not.

3.  Whether petitioner may exclude the lottery winnings he received in 1996 because he was employed by the Consulate General of Nigeria in 1989 when he won the lottery.  We hold that he may not.

4.  Whether petitioner had a $4,237 net operating loss carried over to 1996.  We hold that he did not.

5.  Whether petitioner is liable for the accuracy-related penalty under section 6662 for 1996.  We hold that he is not to the extent described below.

Unless otherwise provided, section references are to the Internal Revenue Code in effect for the applicable years, and

Rule references are to the Tax Court Rules of Practice and Procedure.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioner resided in the United Kingdom when he filed his petition.  He has a master's degree in business administration.

Petitioner began working as a clerk for the Consulate General of Nigeria in New York City in 1987.  In 1989, petitioner bought 12 NYSL tickets for $1 each.  On January 4, 1989, petitioner won about $26 million from the NYSL, payable in 20 equal annual installments beginning in 1989.  The NYSL did not offer petitioner the option of receiving a lump-sum payment in 1989.  Petitioner was employed by the Consulate General of Nigeria when he won the lottery.  He used the cash method of accounting in 1989.

Petitioner received two or three offers to buy the rights to his future lottery winnings for about 50 cents on the dollar.  He did not sell his rights.

Petitioner acquired permanent U.S. resident status on November 24, 1989, and he maintained that status in 1996.  The NYSL paid petitioner $1,238,100 in 1996.

On a Form 8275, Disclosure Statement, attached to his 1996 return, petitioner reported that he received $1,238,100 from the NYSL, and said:

Augustin B. Jombo had diplomatic status when he won the New York Lottery in 1989. His winnings are being paid out over a twenty-year period. Prior audits have denied Mr. Jombo gambling losses against his lottery winnings under Reg. 1.165-10. The Internal Revenue Service Agent in charge of the audit ruled that Mr. Jombo was considered to have won the lottery in 1989, which is the only year he is considered to have "gambling winnings." Therefore, since all his gambling winnings were considered to have taken place in 1989, his diplomatic status would exempt his lottery winnings from income taxation. Mr. Jombo should not have to pick up gambling winnings from the twenty-year payout as taxable income, because he won the lottery in 1989 when he had diplomatic status.

Petitioner claimed a $4,237 net operating loss (NOL) on his 1996 return. In a separate statement attached to his 1996 return, petitioner identified the NOL as a "net operating loss carryover", but he did not state from which year or years he was carrying the loss. Respondent sent petitioner a letter dated May 7, 1998, informing him that his 1996 Federal income tax return had been selected for examination.

OPINION

A.   Petitioner's Contentions

Petitioner contends that: (1) Respondent bears the burden of proof for all issues; (2) he is not liable for tax on his 1996 lottery payment because he constructively received all of his lottery winnings in 1989 when he was a tax-exempt employee of the Nigerian Consulate General; (3) his 1996 lottery winnings are a nontaxable annuity; (4) he is entitled to a net operating loss carryover deduction of $4,237 in 1996; and (5) he is not liable

for the accuracy-related penalty under section 6662 because he disclosed his lottery winnings on his 1996 return.

B.  Burden of Proof

Petitioner contends that respondent bears the burden of proving that the NYSL winnings petitioner received in 1996 are taxable income.  We disagree.

Under section 7491, the burden of proof is placed on the Secretary under certain circumstances.  Section 7491 applies to court proceedings arising in connection with examinations beginning after July 22, 1998.  Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(a), 112 Stat. 726.  Respondent sent a letter to petitioner dated May 7, 1998, informing him that his 1996 Federal income tax return had been selected for examination.  Absent any contrary evidence, we treat that date as the date respondent's examination of petitioner's 1996 tax year began.  Thus, section 7491(a) does not apply, and respondent's determination is presumed to be correct and petitioner bears the burden of proof on all issues in this case.  Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).

C.  Whether Petitioner Constructively Received All of His Lottery Winnings in 1989

Petitioner contends that the NYSL amounts that he received in 1996 are not taxable in 1996 because he constructively received all of his lottery winnings in 1989.  Petitioner points

out that he had the opportunity to sell his future winnings, but he decided not to do so. He contends that he constructively received payment of all of his lottery winnings in 1989 because he had an unqualified vested right to sell his future lottery payments in 1989. We disagree for reasons stated next.

1. Whether Petitioner Constructively Received All of His Lottery Winnings in 1989

A cash method taxpayer generally recognizes an item of gross income when it is actually or constructively received. Secs. 1.446-1(c)(1)(i), 1.451-2(a), Income Tax Regs. A cash method taxpayer constructively receives funds if the taxpayer has an unqualified, vested right to receive immediate payment. Childs v. Commissioner, 103 T.C. 634, 654 (1994), affd. without published opinion 89 F.3d 856 (11th Cir. 1996); Martin v. Commissioner, 96 T.C. 814, 823 (1991); Jerome Castree Interiors, Inc. v. Commissioner, 64 T.C. 564, 568 (1975), affd. without published opinion 539 F.2d 714 (7th Cir. 1976).

The NYSL did not offer to pay petitioner all of his lottery winnings in 1989. Thus, petitioner did not constructively receive all of his NYSL lottery winnings from the NYSL in 1989.

2. Whether Petitioner Constructively Received Winnings Because He Could Have Sold the Right To Receive Future Lottery Payments in 1989

Petitioner contends that he constructively received all of his lottery winnings in 1989 because he could have sold the right to receive his future lottery payments at a 50-percent discount

in 1989.  We disagree.  A taxpayer constructively receives income when he has an unqualified, vested right to receive immediate payment.  Childs v. Commissioner, supra; Martin v. Commissioner, supra.  Petitioner did not accept an offer to buy the right to receive his future lottery winnings.  An unaccepted offer to buy a future income stream gives a taxpayer no right to the proceeds from a sale of that income stream.  Accordingly, petitioner did not constructively receive all of his lottery winnings in 1989.

Petitioner contends in his opening brief that Cowden v. Commissioner, T.C. Memo. 1961-229, and Sainte Claire Corp. v. Commissioner, T.C. Memo. 1997-171, affd. without published opinion sub nom. Boccardo v. Commissioner, 164 F.3d 629 (9th Cir. 1998), support his contention that he constructively received all of the lottery winnings in 1989 when he received offers to buy the future lottery payments.  We disagree.  In Cowden, the Court held that the contract right to deferred bonus payments under an oil and gas lease was the equivalent of cash and thus taxable as if cash had been received by the taxpayer because the obligation of the payor was an unconditional and assignable promise to pay by a solvent obligor, was of a kind that was frequently transferred to lenders or investors at a discount not substantially greater than the generally prevailing premium for the use of money, and was readily convertible to cash.  Cowden is distinguishable because petitioner did not have the option to

receive a lump-sum payment from the NYSL or an enforceable promise to pay a lump sum.[1]

The taxpayer in <u>Sainte Claire Corp. v. Commissioner</u>, <u>supra</u>, owned a promissory note that was due on November 1, 1988. On November 1, 1988, the taxpayer corporation and the borrower negotiated an extension of the note to April 1, 1990. We held that the taxpayer corporation constructively received the principal owed on the promissory note when it became due on November 1, 1988, because, on that date, the taxpayer had an unrestricted right to receive the income, the taxpayer was able to collect it, and the failure to receive it was due to the taxpayer's own choice. <u>Sainte Claire Corp.</u> is distinguishable from this case because petitioner never had the right to receive the 1996 lottery installment in 1989.

We conclude that petitioner did not constructively receive his 1996 payment from the NYSL in 1989 and that the 1996 NYSL payment is taxable in 1996.

---

[1] Petitioner conceded in his reply brief that <u>Cowden v. Commissioner</u>, T.C. Memo. 1961-229, and the cash equivalency and economic benefit doctrines do not support his contention that he received all of the lottery winnings in 1989.

D.   Whether Petitioner May Exclude His NYSL Winnings Because He
     Was an Employee of the Nigerian Consulate General

     1.   The Vienna Convention on Diplomatic Relations of 1961
          and the Vienna Convention on Consular Relations of 1963

Petitioner contends that he may exclude $1,238,100 that he
received from the NYSL in 1996 under either the Vienna Convention
on Diplomatic Relations, April 18, 1961, 23 U.S.T. 3227,[2] or the
Vienna Convention on Consular Relations, April 24, 1963, 21
U.S.T. 77.[3]  We disagree.  Article 34 of the Vienna Convention on
Diplomatic Relations (article 34), supra, provides that
diplomatic agents are exempt from all dues and taxes, except:

> (d) dues and taxes on private income having its
> source in the receiving State and capital taxes on
> investments made in commercial undertakings in the
> receiving State;

Similarly, article 49(d) of the Vienna Convention on Consular
Relations (article 49), 21 U.S.T. at 108, provides that consular
officers and employees are exempt from all dues and taxes,
except:

---

[2]  This was ratified by the U.S. Senate, Sept. 14, 1965;
ratification deposited, Nov. 13, 1972; entered into force for the
United States, Dec. 13, 1972, adopted by the Diplomatic Relations
Act of 1978, Pub. L. 95-393, 92 Stat. 808, currently codified at
22 U.S.C. sec. 254a (2000).

[3]  This was ratified by the U.S. Senate, Oct. 22, 1969;
ratification deposited, Nov. 24, 1969; entered into force for the
United States, Dec. 24, 1969.

(d) dues and taxes on private income, including capital gains, having its source in the receiving State and capital taxes relating to investments made in commercial or financial undertakings in the receiving State;

Petitioner's lottery payment in 1996 was private income having its source in the United States. Thus, that payment is not exempt from tax under either article 34 or article 49.

Petitioner contends that the 1996 NYSL payment is tax exempt under article 32 of the Vienna Convention on Consular Relations (article 32), 21 U.S.T. at 98. Article 32 states:

Exemption From Taxation of Consular Premises

1. Consular premises and the residence of the career head of consular post of which the sending State or any person acting on its behalf is the owner or lessee shall be exempt from all national, regional or municipal dues and taxes whatsoever, other than such as represent payment for specific services rendered.

2. The exemption from taxation referred to in paragraph 1 of this Article shall not apply to such dues and taxes if, under the law of the receiving State, they are payable by the person who contracted with the sending State or with the person acting on its behalf.

We disagree. Article 32 applies only to taxes imposed on consular premises and on the residence of the career head of the consular post. Thus, the $1,238,100 that petitioner received from the NYSL in 1996 is not excluded from income by the Vienna Conventions.

2.   Section 893

Petitioner contends that the $1,238,100 that he received from NYSL in 1996 is exempt from tax under section 893(a)[4] because he was an employee of a foreign government.  We disagree.

Salaries and wages received by an employee as compensation for official services to a foreign government or international organization are exempt from tax.  Sec. 893(a).  However, income received by employees of a foreign government or international organization from sources other than their salary, fees, or wages is subject to Federal income tax.  Sec. 1.893-1(a)(3), Income Tax Regs.  Thus, petitioner's lottery winnings are not exempt from tax under section 893(a).

---

[4]  Sec. 893(a) provides in part:

SEC. 893. COMPENSATION OF EMPLOYEES OF FOREIGN GOVERNMENTS OR
          INTERNATIONAL ORGANIZATIONS.--

     (a) Rule for Exclusion.--Wages, fees, or salary of any employee of a foreign government or of an international organization (including a consular or other officer, or a nondiplomatic representative), received as compensation for official services to such government or international organization shall not be included in gross income and shall be exempt from taxation under this subtitle if-- * * *

E.   Whether Petitioner's 1996 NYSL Payment Is Excluded From
     Gross Income as an Annuity Under Section 72(b)(1)

Petitioner contends that he may exclude the 1996 NYSL payment from income as an annuity under section 72(b)(1).[5] We disagree.

Gross income generally includes any amount received as an annuity.  Sec. 72(a).  However, amounts attributable to the taxpayer's investment in the annuity contract are excludable.  Sec. 72(b)(1).  Petitioner paid $1 for the winning lottery ticket.  Thus, petitioner may exclude at most $1.  Id.  We conclude that petitioner may not exclude the 1996 NYSL payment from income under section 72(b)(1).

F.   Whether Petitioner Had a $4,237 Net Operating Loss Carryover
     for 1996

Petitioner contends that he may carry over to 1996 a $4,237 net operating loss which resulted from investment losses from his rental property in previous years.  We disagree.

Petitioner reported in a statement attached to his 1996 return that he had a $4,237 net operating loss carryover.[6]  He

_____

[5]  Sec. 72(b) provides in part:

     (1) In general.--Gross income does not include that part of any amount received as an annuity under an annuity, endowment, or life insurance contract which bears the same ratio to such amount as the investment in the contract (as of the annuity starting date) bears to the expected return under the contract (as of such date).

[6]  A tax return is not evidence of the truth of the facts
                                        (continued...)

did not identify on the return the year or years from which he was carrying the loss to 1996.  On brief, petitioner contends that he carried forward rental property losses from 1991 and 1992.  To carry forward or carry back net operating losses, the taxpayer must prove the amount of the net operating loss carryforward or carryback and that his or her gross income in other years did not offset that loss.  Sec. 172(c); Jones v. Commissioner, 25 T.C. 1100, 1104 (1956), revd. and remanded on other grounds 259 F.2d 300 (5th Cir. 1958).  There is no evidence in the record that petitioner had rental property losses or that any losses exceeded his large amount of gross income from 1991 through 1996.

Petitioner testified that his net operating loss claim related to a $2 million stock options loss in 2001.  He did not explain how he knew in 1998, when he filed his 1997 return, that he would have a $2 million stock options loss in 2001.  We conclude that petitioner may not carry over any losses to 1996.

---

⁶(...continued)
stated in it.  Lawinger v. Commissioner, 103 T.C. 428, 438 (1994); Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979); Roberts v. Commissioner, 62 T.C. 834, 837 (1974).

G.    <u>Whether Petitioner Is Liable for the Accuracy-Related Penalty Under Section 6662</u>

1.    <u>Adequate Disclosure and Reasonable Basis</u>

Petitioner contends that he is not liable for the accuracy-related penalty under section 6662 for negligence and substantial understatement of income tax because he adequately disclosed his positions relating to the lottery winnings and net operating loss on a statement attached to his return and had a reasonable basis for those positions. Sec. 6662(d)(2)(B)(ii); sec. 1.6662-3(c), Income Tax Regs. We agree to the extent described below.

Taxpayers are liable for a penalty under section 6662 equal to 20 percent of the part of the underpayment attributable to negligence or disregard of rules or regulations or to any substantial understatement of income tax. Sec. 6662(a) and (b)(1) and (2). However, a taxpayer is not liable for the accuracy-related penalty under section 6662(a) and (b)(1) if (1) the taxpayer adequately discloses the relevant facts affecting the item on his or her return or in a statement attached to the taxpayer's return and has a reasonable basis for that treatment, or (2) there was reasonable cause for the underpayment and the taxpayer acted in good faith. Secs. 6662(d)(2)(B)(ii), 6664(c)(1); secs. 1.6662-3(c), 1.6664-4(a), Income Tax Regs.

We consider the facts and circumstances in deciding whether the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1); sec. 1.6664-4(b)(1), Income Tax Regs. We conclude that petitioner acted in good faith and was not negligent in claiming that the 1996 lottery winnings were nontaxable because, when he filed his 1996 return, petitioner reasonably believed that the lottery winnings he received in 1996 were nontaxable.

The taxpayer must disclose an item or a position on a return on a Form 8275, Disclosure Statement, or a Form 8275-R, Regulation Disclosure Statement, attached to the return (or a qualified amended return). Sec. 1.6662-3(c), Income Tax Regs. Petitioner adequately disclosed on Form 8275 attached to his 1986 return the facts relevant to the lottery winnings, and he had a reasonable basis for his position relating to those winnings. In contrast, petitioner did not disclose facts relating to, or have a reasonable basis for, his treatment of the net operating loss carryover. We conclude that petitioner is not liable for the accuracy-related penalty with respect to his lottery winnings but is liable for that penalty with respect to his net operating loss carryover.

2.   <u>Reliance on Professionals</u>

A taxpayer may be relieved of liability for the accuracy-related penalty if he or she shows that there was reasonable cause for the understatement and that the taxpayer acted in good faith with respect to the understatement.  Sec. 6664(c); sec. 1.6664-4(a), Income Tax Regs.  Petitioner contends that he is not liable for the accuracy-related penalty under section 6662 because he reasonably relied on the advice of tax professionals. We disagree.  Petitioner did not name any professionals or say what information he provided to them.  We conclude that petitioner did not rely on the advice of tax professionals, and that he is liable for the accuracy-related penalty under section 6662(a) for 1996.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered for respondent</u>.