# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

--------

Argued December 3, 2004       Decided February 18, 2005
Reissued April 12, 2005

No. 03-1355

AUGUSTIN B. JOMBO,
APPELLANT

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE,
APPELLEE

--------

Appeal from the United States Tax Court
(No. IRS-99-16627)

--------

*Augustin B. Jombo*, pro se, argued the cause and filed the briefs for appellant.

*Karen D. Utiger*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief were *Eileen J. O'Connor*, Assistant Attorney General, and *Richard Farber*, Attorney, U.S. Department of Justice. *Gilbert S. Rothenberg*, Attorney, U.S. Department of Justice, entered an appearance.

Before: HENDERSON, TATEL, and ROBERTS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Does a taxpayer who wins a lottery

in one year but receives installment payments over the next twenty years constructively receive his entire winnings in the first year, exempting them from federal taxation in later years? The Tax Court answered no, and we agree.

**I.**

In 1989, appellant Augustin Bolsover Jombo was employed as a clerk at Nigeria's New York Consulate. After purchasing twelve one-dollar lottery tickets, he hit the jackpot, winning a grand total of $26 million. Under then-existing New York State Lottery ("NYSL") rules, Jombo did not get his entire winnings in 1989. Instead, he received the right to approximately $1.2 million per year for twenty years. Although Jombo had several offers to purchase the rights to his future lottery payments, he declined to sell. *See Jombo v. CIR*, 84 T.C.M. (CCH) 496, 497 (2002).

Nineteen eighty-nine was a significant year for Jombo in another respect. After winning the lottery, he acquired U.S. permanent resident status, which he maintained at least through 1996.

A cash-accounting-method taxpayer in 1989, Jombo included the annual lottery payments as gross income in his 1989 and 1990 federal income tax returns. Nothing in the record indicates how Jombo handled his annual payments for the next few years, but in 1996—the year at issue here—he refused to include the annual payment in his tax return, explaining in an enclosed statement,

> Prior audits have denied Mr. Jombo gambling losses against his lottery winnings under Reg. 1.165-10. The Internal Revenue Service Agent in charge of the audit ruled that Mr. Jombo was considered to have won the lottery in 1989, which is the only year he is considered to have 'gambling winnings.' Therefore, since all his gambling winnings were

> considered to have taken place in 1989, his diplomatic status would exempt his lottery winnings from income taxation. Mr. Jombo should not have to pick up gambling winnings from the twenty-year payout as taxable income, because he won the lottery in 1989 when he had diplomatic status.

*Id.* Unpersuaded, the Commissioner notified Jombo of an income tax deficiency in the amount of $503,105 and assessed an inaccuracy penalty of $100,621.

Jombo timely challenged the deficiency notice, and the Tax Court, following a trial, found that the Commissioner had correctly calculated the deficiency. *See id.* at 501; *see also Jombo v. CIR*, No. 16627-99 (U.S. Tax Ct. July 2, 2003). The court held that because Jombo had no right to receive the full $26 million in 1989, he had not constructively received the entire amount in that year. *See Jombo*, 84 T.C.M. (CCH) at 498-99. Jombo therefore owed taxes on the $1.2 million 1996 payment. *See id.* at 498. Rejecting Jombo's corollary argument that his 1989 diplomatic status removed his winnings from the Commissioner's reach, the court found that neither international treaties nor the U.S. tax code provided such an exemption for gross income derived from lottery payments. *See id.* at 499. The court also rejected Jombo's argument that the 1996 payment qualified as an annuity and was therefore properly excluded from his gross income. *See id.* at 499-500. Finally, the Tax Court held that Jombo owed taxes due to an unsubstantiated net operating loss he had attempted to carry forward. *See id.* at 500. Finding that Jombo had reasonably believed that the 1996 lottery payment was nontaxable, the court reduced the inaccuracy penalty to correspond solely to the claimed net operating loss. *See id.*

Jombo appealed to the Fourth Circuit, which transferred the case here. Venue is proper in this Circuit because Jombo's legal residence is now outside the United States—the United

Kingdom, according to the record. *See* 26 U.S.C. § 7482(b). Appearing pro se, Jombo raises only one issue: whether he had to pay taxes on the installment payment received in 1996.

## II.

We review questions of law decided by the Tax Court de novo. *Andantech, LLC v. CIR*, 331 F.3d 972, 976 (D.C. Cir. 2003). We review for clear error the Tax Court's findings of fact and its disposition of mixed questions of law and fact. *Id.*

Before turning to the merits of Jombo's appeal, we must consider his claim that the Commissioner improperly imposed the burden of proof on him. In support, he cites Internal Revenue Code section 7491, which shifts the burden of proof to the government after a taxpayer presents "credible evidence" with respect to any factual issue pertaining to the taxpayer's liability. That provision, however, applies only in "court proceedings arising in connection with examinations commencing after [July 22, 1998]." Internal Revenue Service Restructuring and Reform Act of 1998 § 3001(c), Pub. L. No. 105-206, 112 Stat. 685, 727 (1998). The Tax Court found that "[a]bsent any contrary evidence," the Commissioner's May 7, 1998 letter informing Jombo that his 1996 return was under examination provided "the date respondent's examination of petitioner's 1996 tax year began," and that because that letter was sent over two months before section 7491's July 22 effective date, the burden of proof remained on the taxpayer. *Jombo*, 84 T.C.M. (CCH) at 498.

Reviewing for clear error, we find none. Although Jombo insists that the May 7 letter did not commence the examination, he suggested no alternative date to the Tax Court, nor does he offer one here. Absent evidence of an alternative start date, we have no basis for questioning the Tax Court's conclusion that section 7491 is inapplicable to this case and that the burden of proof therefore remains on Jombo.

In support of his claim that the $1.2 million he received in 1996 did not represent gross income, Jombo argues that he "constructively received" the entire jackpot in 1989, the year he won the lottery. In his view, the entire $26 million constituted income in 1989 when, according to Jombo, his diplomatic status insulated him from taxation, at least at the U.S. resident rate. If Jombo is right, moreover, the Commissioner can no longer pursue a deficiency from 1989 because the statute of limitations has run, *see* 26 U.S.C. § 6501(a). Rejecting Jombo's argument, the Tax Court found constructive receipt inapplicable because Jombo lacked an "unqualified, vested right to receive immediate payment" in 1989. *Jombo*, 84 T.C.M. (CCH) at 498 (citing *Childs v. Commissioner*, 103 T.C. 634, 654 (1994), *aff'd without published opinion*, 89 F.3d 856 (11th Cir. 1996)).

This case provides the first opportunity for us to examine the tax doctrine of constructive receipt. As Jombo notes, it is "near impossible to find appropriate decided cases" addressing constructive receipt in the context of lottery winnings. Appellant's Br. at 9. Fortunately, the applicable regulations are directly on point. For cash-accounting-method taxpayers, like Jombo, "all items which constitute gross income . . . are to be included for the taxable year in which actually or constructively received." 26 C.F.R. § 1.446-1(c)(1)(I). "Gross income" includes lottery winnings, *see United States v. Maginnis*, 356 F.3d 1179, 1183 (9th Cir. 2004) ("Lottery prizes are treated by the tax code as gambling winnings, which are taxed as ordinary income.")—doubtless an application of the canon *nulli est homini perpetuom bonum*, or "no man has perpetual good fortune," *see* Titus Maccius Plautus, *Curculio* act 1, sc. 3. According to the constructive receipt regulation:

> [i]ncome although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon

it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions.

26 C.F.R. § 1.451-2(a). The regulation provides an example: "if a corporation credits its employees with bonus stock, but the stock is not available to such employees until some future date, the mere crediting on the books of the corporation does not constitute receipt." *Id.*

We find no error, much less clear error, in the Tax Court's rejection of Jombo's constructive receipt argument. *See Andantech*, 331 F.3d at 976; *see also Baxter v. CIR*, 816 F.2d 493, 494 (9th Cir. 1987) (applying clear error review to the Tax Court's application of the constructive receipt doctrine); *Byrne v. CIR*, 449 F.2d 759, 760 (8th Cir. 1971) (same). Despite Jombo's assertions that NYSL winners receive the legal right to the total sum once lottery officials acknowledge and validate their winnings and the winners sign the certificate of term-payment, nothing in the record even suggests that Jombo could have obtained the entire $26 million other than through annual payments. Indeed, Jombo conceded as much before the Tax Court. Tr. of 10/22/01 Hr'g at 12 ("Today you have an option to get a lump sum . . . . In that year, 1989, of course there was no plan like that."). Because Jombo could not "draw upon [the entire jackpot] at any time," 26 C.F.R. § 1.451-2(a), his control of the lottery winnings was "subject to substantial limitations and restrictions," *id.* As in the regulation's example, the NYSL credited Jombo with the entire $26 million, but because the full amount was "not available . . . until some future date," the "mere crediting on the books [did] not constitute receipt." *Id.*

Jombo claims that the NYSL would have permitted the sale of his rights to future payments and that this demonstrates his unfettered access to the full $26 million. Even assuming that the

NYSL would have allowed such a sale—a proposition for which Jombo provides no support—the mere availability of the transaction would have left unchanged the "substantial limitations and restrictions" on Jombo's ability to "draw upon [the jackpot] at any time." 26 C.F.R. § 1.451-2(a). We therefore agree with the Tax Court that Jombo's alleged ability to sell his rights in 1989 does not mean Jombo constructively received his entire winnings in that year. As the Commissioner has explained in a private letter ruling on this issue, a "lottery winner's power to assign his or her rights to a lottery prize does not accelerate the time in which the Lottery is required to make prize payments. Accordingly, a lottery winner is not taxable on the value of an annuitized prize in the year it is won under the doctrine of constructive receipt." Priv. Ltr. Rul. 200031031 (Aug. 4, 2000). Though letter rulings are not binding, *Inv. Annuity, Inc. v. Blumenthal*, 609 F.2d 1, 7 (D.C. Cir. 1979), we think the Commissioner's position makes eminent sense.

Given our conclusion that the annual payment was taxable in 1996, we have no need to address the parties' arguments about Jombo's 1989 tax status as a consular employee. We also agree with the Commissioner that Jombo's physical absence from the United States in 1996 is irrelevant to the determination of his gross income, for, as he stipulated in the Tax Court, Jombo maintained his status as a U.S. permanent resident during that year. "[A]ll resident alien individuals are liable to the income taxes imposed by the Code whether the income is received from sources within or without the United States," 26 C.F.R. § 1.1-1(b), and individuals qualify as resident aliens if their permanent residency status has not been revoked, regardless of their absence from or presence in the United States during a given year. 26 U.S.C. § 7701(b)(1)(A)(I), (b)(6).

Hedging his bets, Jombo makes an alternative argument. Assuming the 1996 payment represented income in that year, he contends, the Tax Court erroneously held that his investment in

the annuitized lottery payments was "at most $1." *See Jombo*, 84 T.C.M. (CCH) at 500. In support of this argument, Jombo tells us—again without citation—that the NYSL invested $12 million in 1989 to yield twenty $1.2 million annual payments. According to Jombo, the Code's exclusion from gross income of investments in annuities, *see* 26 U.S.C. § 72(b)(1), thus entitles him to exclude a "much greater" portion of the annual payment, Appellant's Br. at 18.

Like the Tax Court, we will assume without deciding that the NYSL's 1996 disbursement to Jombo constituted an annuity governed by I.R.C. section 72. That section defines an "investment in [an annuity] contract" for purposes of determining the excludable amount of an annuity as "(A) the aggregate amount of premiums or other *consideration paid* for the contract, minus (B) the aggregate amount received under the contract before such date, to the extent that such amount was excludable from gross income under this subtitle or prior income tax laws." 26 U.S.C. § 72(c)(1) (emphasis added). Yet neither the Code nor the applicable regulation, with the exception of the provisions governing certain employer-funded pension plans, specifies who pays the consideration. *See generally* 26 C.F.R. § 1.72. The Third Circuit has interpreted "consideration paid" as the amount paid by the *taxpayer*, not the total amount invested in the annuity. *Kute v. United States,* 191 F.3d 371, 375 (3d Cir. 1999) (stating that "in general gross income includes any amount received as an annuity, but I.R.C. § 72(b) excludes amounts attributable to the *taxpayer's* investment in the contract" (emphasis added)). Agreeing with the Third Circuit's sensible approach, we uphold the Tax Court's determination that Jombo's excludable investment was $1—the amount he paid for the winning ticket.

For all of these reasons, we agree with the Tax Court that the United States may continue sharing in the fruits of Jombo's good fortune.  The Tax Court's finding of a $503,105 deficiency for the 1996 tax year is affirmed.

*So ordered.*